Entered on Docket
August 22, 2025
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: August 22, 2025**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>      - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>      Reorganized Debtors.<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and<br>    Electric Company<br>☒ Affects both Debtors<br><br>\* *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | Bankruptcy Case<br>No. 19-30088-DM<br><br>Chapter 11<br><br>Jointly Administered |
| ERICA AMARIE GELSEY,<br><br>      Plaintiff,<br><br>v.<br><br>PG&E CORPORATION; PACIFIC GAS AND ELECTRIC COMPANY; and FIRE VICTIM TRUST,<br><br>      Defendants. | Adversary Proceeding<br>No. 25-03024-DM |

**MEMORANDUM DECISION REGARDING MOTIONS TO DISMISS**

## I. INTRODUCTION

At a hearing on August 19, 2025, the court announced a ruling in this adversary proceeding granting motions to dismiss ("Motions") filed by defendants PG&E Corporation and Pacific Gas and Electric Company ("Debtors") and defendant Fire Victim Trust ("FVT"), on behalf of Cathy Yanni, Trustee, and other defendants who are referred to within the term FVT.

The purpose of this Memorandum Decision is to expand slightly and explain in some more detail the reasoning behind the court's oral decision on the two motions for the benefit of plaintiff, Eric Amarie Gelsey ("Gelsey"), defendants and all other parties who may be monitoring this matter.

Concurrently with this Memorandum Decision, the court is issuing an order granting the Motions and dismissing the adversary proceeding.

## II. BACKGROUND

As is well known by Gelsey and all parties and anyone else following these complicated bankruptcy cases, Debtors filed Chapter 11 on January 29, 2019, primarily in response to a series of wildfires (the "Wildfires") that had occurred in 2015, 2017 and 2018 causing billions of dollars in damage, injuring or killing thousands of persons and entities injured by the Wildfires or holding claims against Debtors under subrogation or other theories. Further, the California legislature in AB 1054, fixed a deadline of June 30, 2020 for Debtors to obtain confirmation of a Chapter 11 plan in order to qualify for future legislative entitlements for dealing with wildfires in the

future. That legislation was prospective only and did not provide relief or deal with the Wildfires dealt with in these bankruptcy cases.

On June 20, 2020, the court confirmed *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated June 19, 2020* (Dkt. 8048) (the "Plan"). The court's Confirmation Order was entered on June 20, 2020 (Dkt. 8053).

Pursuant to the Plan, the FVT was created to administer, process, settle, resolve, liquidate, satisfy and pay the claims arising out of the Wildfires ("Wildfire Claims") (other than claims of public entities of those based upon subrogation wildfire claims against Debtors) Gelsey and tens of thousands of others asserting Wildfire Claims were affected by creation of the FVT, as all of their claims were channeled to the FVT for adjudication and resolution, independent of Debtors, who received broad discharges of all liabilities dealt with under the Plan pursuant to 11 U.S.C. § 1141(a).

Debtors funded the FVT by "channeling" cash and securities worth approximately $13.5 billion to it. The Wildfire Claims were the subject of a "channeling injunction" that established the FVT as the sole source of recovery for the holders of those Wildfire Claims; they would have no recourse against the discharged Debtors. Those holders were "permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction or recovery from any Debtor or Reorganized Debtor." Plan, § 10.7(a); Confirmation Order, Para 53(a).

It is important to note, again, that any wildfires occurring after January 29, 2019 were not dealt with by the FVT and any wildfires or other claims asserted against Debtors occurring after entry of the Confirmation Order were not affected in any way by these bankruptcy cases or the Plan or the Confirmation Order.

### III. DISCUSSION

In her Adversary Proceeding Complaint ("Complaint") initiating this adversary proceeding on May 22, 2025 (Dkt. 1), Gelsey named as defendants Debtors and the FVT. In an introductory paragraph, Gelsey stated that she seeks "redress in the form of punitive damages for the harm caused to her and her minor child by Defendants' Fire Victim Trust."

After invoking the court's jurisdiction and venue, and setting forth a bit of background about what she was subjected to during the fire in Sonoma County in 2017 that caused her injuries, Gelsey sets forth several paragraphs dealing not only with Debtors' criminal convictions but also her displeasure with the treatment of her and other Wildfires victims' rights in what she describes as a "troubling disregard" by the FVT of basic rights afforded to them.

Her Complaint then continues to set forth eight separate causes of action, summarized and discussed below.

**Cause of Action 1 – BDO Firm Use**

In this cause of action, Gelsey contends that the FVT utilized the accounting firm, BDO, described by her as a "known felony firm" to perpetuate fraud and potentially violating numerous laws and regulations. In short, she complains that the

-4-

FVT contracted with BDO notwithstanding eight enumerated instances that she contends establish the unsuitability of BDO to be engaged by the FVT.

She complains that "broader accountability is called for. The bankruptcy courts must conduct a comprehensive audit of the [FVT]'s financials for all years in operation."

The court points out that the FVT had complete discretion and did not need this court's authority to select BDO. The Plan quite explicitly refers to the FVT's discretion on matters such as this, without further judicial oversight. The court cannot examine the FVT's selection of BDO or other similar matters dealing with its administration of the claims process.

For the same reason, the court cannot now second guess the FVT's decision nor delve into any specifics about BDO.

The first cause of action must be dismissed as to the FVT. It makes no allegations attributable to Debtors and therefore it must also be dismissed in favor of Debtors.

**Cause of Action 2 - Wilmington Trustee Duplicative Trustee is a Criminal Entity**

Gelsey's dissatisfaction regarding FVT's selection of Wilmington Trust is similar. It enumerates ten instances that Gelsey believes are violations of laws attributable to Wilmington Trust. The court's inability to deal with matters pertaining to Wilmington are the same.

As with the BDO, the second cause of action must be dismissed as to all defendants.

Case: 25-03024    Doc# 64    Filed: 08/22/25    Entered: 08/22/25 15:33:46    Page 5 of 14

**Cause of Action 3 - Trustee Violations Unlawful Excess Withholding of Medical Liens**

This cause of action appears to be a summary of Gelsey's complaints about how some of her claims were not administered in accordance with specific laws and guidelines that the FVT should have followed. No elaboration is necessary here because all of those allegations pertain to the administration of claims by the FVT that are not within this court's jurisdiction. All of those responsibilities and duties were delegated to the FVT without judicial oversight.

The third cause of action must be dismissed as to all defendants.

**Cause of Action 4 - Defendant Violations of Felony Parole**

This entire cause of action is quite broad but appears to encompass events attributable to Debtors and focuses on their obligations under California Public Utilities Code Section 451 that continue to victimize those affected by the fires and caused subsequent fires in 2019, 2020 and 2021. To the extent Gelsey is focusing on damages she suffered during the 2017 fire, those claims were subject to the FVT. To the extent that there are any residual liabilities that arose from fires after the Confirmation Order, the court has no jurisdiction to deal with them. The same is true with her allegations about events in March 2025 regarding a billboard she describes as a "tone-deaf company [that] subjected plaintiff and other fire victims to what can only be considered an insidious slap in the face to fire victims." While the court understands Gelsey's displeasure

with that conduct, there is no jurisdiction in this court to afford her any relief.

For these reasons, the fourth cause of action must also be dismissed as to all defendants.

**Cause of Action 5 - Trustees and Fiduciary Victimization of Fire Victims**

In this cause of action, Gelsey recites a litany of grievances regarding various parties including the presiding judge, the U.S. Bankruptcy Court in general, her prior counsel, and also the decision by the FVT to work with Brown Greer, an entity that assisted in the claims review process.

While the court regrets Gelsey's dissatisfaction with it and the judicial system, an adversary proceeding against the Debtors and the FVT is not an appropriate vehicle.

The same can be said with her dissatisfaction of the conduct of her attorney and her concern for another wildfire survivor, William B. Abrams, whom she mentions more than once.

Finally, she takes issue with the FVT's decision to hire Brown Greer and what she perceives to be a contributing factor to the non-payment of amounts she believes are due and owing to other claimants.

For all of these reasons, and as to Brown Greer, the same reasons described regarding the first and second causes of action, Gelsey does not state any basis for relief in this court or these proceedings regarding this claim. The fifth cause of action must also be dismissed as to all defendants.

-7-

Case: 25-03024    Doc# 64    Filed: 08/22/25    Entered: 08/22/25 15:33:46    Page 7 of 14

### Cause of Action 6 - HIPAA Data Breach and Privacy Violations

This cause of action faults the FVT for non-compliance with data protection laws and its referral of her to Kroll credit monitoring, a subsidiary of Prime Clerk Kroll. She adds to that reference a letter she sent to this court on July 22, 2024 (Dkt. 14543) asking the court to direct Kroll to make amendments to its website.

Once again, her complaints included in this cause of action largely fall within the immunities described above protecting the FVT and all of its conduct in connection with the claims administration process.

The sixth cause of action must also be dismissed as to all defendants.

### Cause of Action 7 - E-Sign and Tort Right Violations – Made Whole Releases

Gelsey has taken issue with language of one of the two releases that were required from her and other Wildfires claimants as a condition to receiving some or all of the payments they were owed by the FVT. At first blush, it appears that she may have had a point. Further inquiry and examination by the court proves that was not the case.

The first "release" was entitled "Mutual Made Whole Release", a document that was originally (Dkt. 6224-2), filed March 9, 2020, three months before confirmation. That document was a three-party agreement, the parties being the FVT Trustee, an individual claimant, and an unnamed entity referred to as "the Insurer". The various recitals in the document made clear

that between an individual claimant and that individual's insurer who may hold subrogation claims, there needed to be a release between those parties whereby the claimant released claims against that claimant's insurer under a principle known as the "made whole doctrine". The application of this principle and the relevance to the Plan and confirmation documents was extensively discussed on the record in early 2020. In short, the Mutual Made Whole Release avoided the potential of having insurers compete with their insureds over funds being administered by the FVT. Without that safeguard it is highly unlikely that the final Plan would have ever been promulgated or been widely supported by the holders of Wildfire Claims who later voted in favor of the Plan.

In paragraph two of that March 9, 2020 document, there are carveouts whereby the claimant does not release claims it may have against the claimant's insurer related to thirteen enumerated categories. Those enumerated categories were numbered (1) through (10) and then (12) through (14). There was no number (11).

By the time the Plan was confirmed that error had been corrected in the final Mutual Made Whole Release, (Dkt. 8053-1, pages 104-108) filed June 20, 2020. Subparagraph two inserts the correct language that makes clear that claimants are not releasing their insureds from "(11) any rights to recover damages for breach of contract or tort (including punitive damages), penalties or equitable relief." This problem that Gelsey complained about in the Complaint was resolved in her and

-9-

all Wildfire Claims holders' favor even before the Plan was filed.

The second and more critical release is entitled "Claimant Release and Indemnification in Connection with the Fire Victim Trust Awards". That document was signed by Gelsey on May 11, 2024 and later filed July 22, 2025 (Dkt. 44). It contains no ambiguous carveouts and none of the confusion that arose and was resolved with the Mutual Made Whole Release. Her release of the FVT was neither ambiguous nor unnecessary. It was required, fully authorized and proper. Gelsey's arguments and concern about this cause of action fail.

A final observation about this cause of action is that Gelsey adds a statement that at the time the releases were demanded, she was "neither mentally nor physically well. She was unable to review or comprehend the releases prior to affixing her signature, nor could she discuss the documents with her attorney due to their non-compliance with e-sign regulations."

Her letter of July 22, 2024, referred to in the sixth cause of action, mentions problems with the e-filing but says nothing about her lack of ability to give such a release.

Nothing plead or even plausible raises a triable issue of fact that would justify permitting Gelsey to amend her complaint to save this cause of action based upon her alleged inability to sign a release. That is because in the very same paragraph where she raises incapacity, she mentions that she discussed these matters with her attorney after which she fired that attorney. The notion that she was misled by signing the

-10-

release, and in particular, the Claimant Release rather than the Mutual Made Whole Release, is not credible and does not justify an amendment.

The seventh cause of action must also be dismissed as to all defendants.

**Cause of Action 8 - Defendant Not Eligible for Compliance AB 1054 Funds**

In this cause of action, Gelsey alludes to events that occurred in the District Court a few months prior to confirmation, which originally were to involve an estimation of fire claims for Plan purposes by the District Court. They were later abandoned when the acceptable Plan surfaced. These events occurred well-before the FVT came into existence.

In this cause of action, she blames several attorneys with self-dealing and other actions that she thinks were contrary to the interest of the Wildfires victims being dealt with under the Plan. She goes on to repeat again some of her issues with BDO and her belief that the FVT's present and prior trustees had some sort of a personal relationship with JAMS or otherwise acted inconsistent with the interest of the creditors they were serving.

She concludes this cause of action by asking why the Bankruptcy Court did not ask fire victims before releasing AB 1054 funds to the defendant. This court, indeed the entire bankruptcy process, had no role to play in the evolution and implementation of AB 1054. There is no relief available to her under this cause of action.

-11-

The eighth cause of action must also be dismissed as to all defendants.

While not framed by the specifics of the eight claims for relief in this adversary proceeding, Gelsey has devoted some energy and effort to challenge what she believes are third party releases, as those instruments have been recently disapproved by the United States Supreme Court in the highly publicized Purdue Pharma bankruptcy. Perhaps she was confusing those releases which with the two releases that are discussed above. Perhaps she believes that somehow confirmation of the Plan here violated what is now the law of the land under the Purdue Pharma decision. She is incorrect.

In the Ninth Circuit, third party releases have been prohibited for decades. In this very case, the court had extensive discussions with counsel and parties about this issue before confirmation, independently reviewed the Plan and other critical documents, and determined that there were no impermissible third party releases anywhere. Third party releases generally run favor of non-debtors who get the benefit of a discharge in favor their common debtor (such as the Sackler family in Purdue Pharma). None was present here. The only possible confusion would come about by Gelsey's possible misunderstanding of exculpation clauses. They are provisions that release parties such as the FVT, the Trust Oversight Committee and others who have played a role in the bankruptcy process, and some of whom Gelsey levels her charges. These are specifically permitted in the Ninth Circuit under *Blixseth v. Credit Suisse*, 961 F.3d 1074 (9th Cir. 2020). They were

discussed in some detail in the court's Order Denying William B. Abrams Motion to Stay, filed May 2, 2024 (Dkt. 14438 in main case). Such clauses are operative to this day, will operate in the future and protect those many parties who played a role in the Debtor's reorganization, Plan, the Confirmation Order, Debtors' discharge and the Channeling Injunction.

**IV. CONCLUSION**

As stated at the conclusion of the August 19 hearing, the court regrets that Gelsey and thousands of other Wildfires claimants did not recover the thirty percent of their anticipated one hundred percent recovery under the Plan. It also regrets that even getting what was paid to them sooner rather than later would have been preferable. Also, that the expenses of administering the FVT were significant, and less expensively would have been even more desirable. But personal desires and hopes notwithstanding, the rule of law, namely, adherence to iron clad principles such as the finality of orders confirming plans and the broad reach of discharges of corporate entities in Chapter 11 regardless of the nature of their torts, are the guiding principles. Claims of denial of due process are not persuasive when the record reflects extensive process getting to the point where these cases were when the Plan was confirmed and where they are now.

The court is concurrently issuing an order dismissing this adversary proceeding of the reasons stated at the recent hearing and in this Memorandum Decision.

**\*\*END OF MEMORANDUM DECISION\*\***

-13-

COURT SERVICE LIST

Erica Amarie Gelsey
590 Farrington Hwy
Unit 524 #482
Kapolei, HI 96707


William B. Abrams
625 McDonald Ave.
Santa Rosa, CA 95404

-14-

Case: 25-03024    Doc# 64    Filed: 08/22/25    Entered: 08/22/25 15:33:46    Page 14 of 14